Filed 7/19/13  P. v. Pacely CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DANTE PACELY,<br><br>    Defendant and Appellant. | D062198<br><br><br>(Super. Ct. Nos. SCD232317,<br> SCD238863) |

APPEAL from a judgment of the Superior Court of San Diego County, Esteban Hernandez, Judge.  Affirmed as modified with directions.

Cynthia M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Theodore M. Cropley, Deputy Attorneys General, for Plaintiff and Respondent.

Dante Pacely appeals from a judgment convicting him of firearm-related offenses and a failure to appear offense. He argues the judgment in the firearm case must be reversed due to instructional error. We find no error in this regard.

Pacely also challenges the trial court's calculation of conduct credits for his presentence custody. We conclude the trial court's calculation was incorrect, and modify the judgment to award the correct amount of conduct credits. As so modified, the judgment is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

On February 19, 2010, Pacely was in a vehicle stopped by the police. The owner of the car (Pacely's girlfriend) was driving and Pacely was in the front passenger seat. During a search of the vehicle's glove compartment, the police found ammunition inside a sock and a loaded gun with the safety off hidden behind the compartment's rear panel. Forensic testing excluded Pacely's girlfriend as a contributor to the DNA mixture on the gun, and provided inconclusive results for gunshot residue on her hands. For Pacely, the testing showed that he was a possible major contributor to the DNA mixture on the gun, with the random probability of such a match being 1 in 24 million for Caucasians, 1 in 2.4 million for African-Americans, and 1 in 100 million for Hispanics. Also, the testing revealed gunshot residue on Pacely's hand that showed he had exposure to the residue from firing or handling a gun, touching a surface where a gun had been, or being in a room where a gun was discharged.

Pacely was charged with: (1) count 1, possession of a firearm by a person convicted of a felony (former Pen. Code,[1] § 12021, subd. (a)(1)); (2) count 2, carrying a loaded firearm in a vehicle (§ 12031, subd. (a)(1)); (3) count 3, causing a firearm to be carried concealed in a vehicle occupied by the person (§ 12025, subd. (a)(3)); and (4) count 4, possession of ammunition by a person convicted of a felony (§ 12316, subd. (b)(1)). The count 2 firearm-carrying offense and the count 3 concealed-firearm offense were elevated to felony charges based on allegations that Pacely had previously been convicted of a felony. (§§ 12031, subd. (a)(2)(A); 12025, subd. (b)(1).)

The jury convicted Pacely of the counts 1 and 4 firearm and ammunition possession offenses and the count 3 concealed-firearm offense and found the count 3 felony-elevating allegation true. The jury deadlocked on the count 2 firearm-carrying offense, and this count was dismissed.

Pacely was released on his own recognizance during trial, and after he failed to appear for the reading of the jury verdict, he was arrested and charged with failure to appear. He pled guilty to this offense. He also admitted a prison prior and a strike prior that were alleged as enhancements in the firearm case.

The trial court sentenced Pacely for both the firearm and failure to appear cases, imposing a total prison term of six years four months. For the firearm case, the sentence consisted of four years on count 1 and a consecutive one-year term for the prison prior,

_____

[1]     Subsequent unspecified statutory references are to the Penal Code. References to sections 12021, 12031, 12025, and 12316 (the offenses of which Pacely was convicted) are to the former statutes; these Penal Code provisions have now been repealed and renumbered.

3

with the terms on the remaining counts stayed. For the failure to appear offense, he received a 16-month consecutive sentence.

DISCUSSION

I. *Claim of Instructional Error*

Pacely argues the standard instruction provided to the jury for count 1 possession of a firearm by a felon (CALCRIM No. 2510) improperly told the jury that it could consider prior conviction evidence as propensity evidence. He asserts the instruction in effect told the jurors that they could infer that he possessed the firearm during the charged offense based on the evidence that he had previously been convicted of a firearm possession offense (a 2008 offense for carrying a concealed firearm in a vehicle).

*Background*

Several of the allegations against Pacely required proof that he had previously been convicted of a felony. That is, the People had to prove his prior felony conviction as an element of the count 1 possession of a firearm by a felon and the count 4 possession of ammunition by a felon. Also, the People had to prove his prior felony conviction for the felony-elevating allegations based on a previous felony conviction that were attached to the count 2 firearm-carrying offense and the count 3 concealed-firearm offense.

To prove Pacely's prior felony conviction for purposes of these allegations, the jury was provided with documents that identified his previous conviction in 2008 for carrying a firearm concealed in a vehicle by a person who is an active gang participant (§ 12025, subds. (a)(1), (b)(3)). Also, the jury was instructed on the prior conviction allegations relevant to the four counts.

4

For the count 1 firearm possession by a felon, the jury was provided an instruction (based on the standard language in CALCRIM No. 2510) which stated in relevant part:

"The defendant is charged in Count One with unlawfully possessing a firearm in violation of Penal Code section 12021(a)(1). [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant possessed a firearm; [¶] 2. The defendant knew that he possessed a firearm; [¶] AND [¶] 3. The defendant had *previously been convicted of a felony.* [¶] . . . [¶] Two or more people may possess something at the same time. [¶] A person does not have to actually hold or touch something to possess it. It is enough if the person has control over it or the right to control it, either personally or through another person. [¶] You may consider evidence, if any, that the defendant was *previously convicted of a crime* only in deciding whether the People have proved *this element* of the crime. Do not consider such evidence for any other purpose." (Italics added.)

As we shall explain, Pacely's contention of instructional error is premised on the latter portion of the count 1 firearm possession instruction, which set forth limiting language that admonished the jurors about the narrow purpose of the prior conviction evidence.[2]

For the felony-elevating allegations for the counts 2 and 3 offenses, the jury was instructed that it had to decide if the People had proven that Pacely was previously convicted "of the crime of Penal Code section 12025(a)(1)/12025(b)(3)." This instruction on these allegations also included limiting language, telling the jury that it should consider the prior conviction evidence only when deciding whether Pacely had incurred

---

[2]     For the count 4 ammunition possession offense, the jury was given essentially the same instruction as for count 1 firearm possession, except the instruction did *not* include the limiting language. (See CALCRIM No. 2591.)

5

the prior conviction, and it should not consider the evidence for any other purpose.[3]

*Analysis*

In reviewing a claim the trial court's instructions were incorrect or misleading, we inquire whether there is a reasonable likelihood the jury misunderstood and misapplied the instructions. (*People v. Mayfield* (1997) 14 Cal.4th 668, 777.) We consider the instructions as a whole and the entire record, including counsels' arguments, and assume the jurors are intelligent persons capable of understanding and correlating the instructions. (*People v. Lopez* (2011) 198 Cal.App.4th 698, 708.)

Pacely's claim of instructional error is based on the language from CALCRIM No. 2510 (for the count 1 offense of felon firearm possession) which stated: "You may consider evidence, if any, that the defendant was *previously convicted of a crime* only in deciding whether the People have proved *this element* of the crime." (Italics added.) He

---

[3]    The instruction on the felony-elevating allegations stated: "If you find the defendant guilty of carrying a loaded firearm in a vehicle as charged in Count Two or guilty of [c]ausing a firearm to be carried concealed in a vehicle as charged in Count Three, you must then decide whether the People have proved the additional allegation that he was *previously convicted of the crime of Penal Code section 12025(a)(1)/12025(b)(3)*. It has already been determined that defendant is the person named in exhibits seven, eight and nine. You must decide whether the evidence proves that the defendant was convicted of the alleged crime. [¶] The People allege that the defendant has been convicted of: [¶] . . . A violation of Penal Code section 12025(a)(1)/12025(b)(3) on June 10, 2008, in the San Diego Superior Court, in Case Number SCE279203. [¶] Consider the evidence presented on this allegation *only when deciding whether the defendant was previously convicted of the crime alleged*. Do not consider this evidence for any other purpose. [¶] The People have the burden of proving this allegation beyond a reasonable doubt. If the People have not met this burden you must find that the alleged conviction has not been proved. [¶] . . . [¶] As a matter of law, a violation of PC 12025(a)(1) with an enhancement pursuant to PC 12025(b)(3) is a felony." (Italics added; see CALCRIM No. 2540.)

6

asserts that it is reasonably likely the jury interpreted the reference to "this element" to mean the *possession* element, rather than the *felony conviction* element, of count 1. Accordingly, he posits the jury was improperly told that it could consider his prior conviction involving firearm possession as propensity evidence supporting that he committed the charged firearm possession offense. The contention is unavailing because there is no reasonable likelihood the jury interpreted the instruction in this fashion.

The jury knew from the instruction for count 1 (CALCRIM No. 2510) that this count (firearm possession by a felon) included the element that: "*defendant had previously been convicted of a felony.*" (Italics added.) To prove this element, the prosecution submitted evidence showing that Pacely had incurred a prior felony conviction for carrying a firearm concealed in a vehicle. The limiting language in CALCRIM No. 2510 referred to this prior conviction evidence (i.e., evidence that "*defendant was previously convicted of a crime*"), and then told the jury that it could consider the prior conviction evidence only to prove "this element" of the crime. (Italics added.) The prior conviction evidence was directly and clearly relevant to the prior conviction element. Because it was obvious that the prior conviction evidence was relevant to the prior conviction element, and there was nothing directing the jurors to consider the prior conviction evidence for any other purpose, reasonable jurors would have understood that the reference to "this element" meant the prior conviction element that was listed in the instruction and that required precisely the type of evidence represented by the prior conviction evidence.

7

This conclusion is buttressed by the other instructions provided to the jury as well as the prosecutor's closing arguments to the jury. The limiting instruction provided for the counts 2 and 3 felony-elevating allegations likewise told the jury that it could consider the prior conviction evidence only to prove that Pacely had incurred the conviction and for no other purpose. Thus, the concept that the prior conviction evidence was relevant solely to allegations that required *proof of a prior conviction* was reinforced by the instruction for the counts 2 and 3 felony-elevating allegations. Aware of this limited use for the prior conviction evidence, the jury would not likely have construed the reference to "this element" in the count 1 instruction as referring to anything other than the prior conviction element of the felon firearm possession offense.

Further, in closing arguments the prosecutor referred to the prior conviction *only* when telling the jury that the People needed to prove the prior conviction because it was an element of counts 1 and 4 and it constituted the felony-elevating allegations for counts 2 and 3. The prosecutor did not suggest to the jury that Pacely's prior conviction could be used to infer that he possessed the gun during the charged offense.

To support a contrary conclusion, Pacely argues that the jury likely thought "this element" meant the possession, not the prior conviction, element because the paragraphs immediately preceding the limiting language discussed the possession element. We are not persuaded. Considering the instructions and closing arguments as a whole, the jury knew that the prosecution had submitted evidence of Pacely's prior conviction to prove the prior conviction element for counts 1 and 4 and the felony-elevating allegations for

8

counts 2 and 3. Reading the count 1 instruction in this context, the jurors would have comprehended that "this element" meant the prior conviction element.

There is no reasonable likelihood the jury interpreted the reference to "this element" to mean the possession, rather than the prior conviction, element. Pacely's contention of instructional error fails.[4]

## II. *Conduct Credits*

Pacely had two periods of custody prior to sentencing which totaled 374 days of actual custody. His first period of custody was for 271 days, from February 19, 2010 (the date he committed and was arrested for the firearm-related offenses), until November 16, 2010 (the date he was released from prison after serving a parole revocation term for the firearm-related offenses). After his release, he was charged with the firearm-related offenses and was allowed to remain free on his own recognizance (OR) pending trial. His second period of custody occurred after he failed to appear in the firearm-related case for the reading of the jury verdict on December 7, 2011, and the court issued a no-bail warrant for his arrest. He was in custody for 103 days, from January 16, 2012 (when he was arrested for failing to appear) to April 27, 2012 (when he was sentenced for both the original firearm-related offenses and the subsequent failure to appear offense).[5]

---

[4]    Given our holding, we need not address the Attorney General's argument that the claim of instructional error was forfeited.

[5]    On January 26, 2012, the prosecution charged Pacely with failure to appear, and he pled guilty to this offense on February 10, 2012.

The trial court ordered Pacely to serve a five-year sentence for the firearm case, and a consecutive 16-month sentence for the failure to appear case. The trial court awarded a total of 430 custody credits against his sentence in the firearm case, consisting of: (1) 374 actual custody days; and (2) 56 conduct credits based on the 15 percent limitation set forth in section 2933.1, which sets this limit for certain statutorily-specified violent felonies. The Attorney General concedes, and we agree, the trial court's use of the 15 percent formula for the conduct credits was incorrect because Pacely's convictions are not encompassed within section 2933.1.

Although the parties agree the court's calculation of conduct credits was incorrect, they do not agree on the correct amount of conduct credits. Accordingly, we now turn to this issue.

*Relevant Statutes*

Under section 2900.5, subdivision (a), a defendant is entitled to a credit against his or her term of imprisonment based on the time spent in custody prior to being sentenced for an offense. The custody credit is provided (1) for time actually served in custody, and (2) for worktime/good behavior "conduct credit" pursuant to section 4019. (*People v. Dieck* (2009) 46 Cal.4th 934, 939 & fn. 3; § 2900.5, subd. (a).) Under section 2900.5, subdivision (b), custody credits are available for presentence custody attributable to the conduct underlying the offense for which the defendant is being sentenced. (See *People v. Duff* (2010) 50 Cal.4th 787, 793.) Further, when the defendant was in custody for

10

multiple offenses and receives consecutive sentences for these offenses, the defendant may receive the actual custody and conduct credits only once. (§ 2900.5, subd. (b).)[6]

The formula for awarding conduct credits authorized by section 4019 has been repeatedly changed in recent years. (See *People v. Brown* (2012) 54 Cal.4th 314, 318 & fn. 3.) Relevant here, effective January 25, 2010, section 4019, subdivision (f) provided for conduct credits at a rate of 100 percent (i.e., two days of conduct credit for every two days of actual custody), with some exceptions. Under one of these exceptions, a defendant who had certain statutorily-specified prior serious felony convictions received conduct credits at a lower 50 percent rate (i.e., two days of conduct credit for every four days of actual custody). (See Historical and Statutory Notes, 51C Pt. 1 West's Ann. Pen. Code (2011 ed.) foll. § 4019, p. 149; *People v. Kennedy* (2012) 209 Cal.App.4th 385, 395; see also *People v. Dieck, supra*, 46 Cal.4th at p. 939; *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 48.) In 2011, section 4019, subdivision (f) was amended to award conduct credits at a rate of 100 percent without the prior serious felony conviction exception. (Historical and Statutory Notes, 51C Pt. 1 West's Ann. Pen. Code, *supra*, foll. § 4019, p. 154.) However, section 4019, subdivision (h) provides that the 2011 amendment awarding 100 percent conduct credit applies only prospectively to

---

6    Section 2900.5, subdivision (b) states: "For the purposes of this section, credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted. Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed."

confinement for crimes committed on or after October 1, 2011. (*People v. Rajanayagam, supra*, 211 Cal.App.4th at pp. 51-52.)

*Analysis*

The parties have addressed the issue of the correct amount of conduct credits in their original briefs and in two supplemental briefs requested by this court. Ultimately, the parties agree that due to Pacely's commission of the firearm offenses in February 2010, Pacely's *first* custody period for the firearm offenses is governed by the January 2010 version of section 4019. However, the parties disagree whether the 50 percent or the 100 percent formula applies under this version. The resolution of this question turns on whether Pacely has incurred a statutorily-defined prior serious felony conviction so as to trigger the lower 50 percent formula under the January 2010 version of section 4019.

The parties also disagree whether Pacely's *second* custody period is governed by the 2011 version of section 4019 (which awards 100 percent conduct credits without the prior conviction exception), given that the second custody period involved confinement for an offense (the December 2011 failure to appear) that occurred after the October 1, 2011 effective date for the 2011 version.

As we shall explain, we conclude the record does not show that Pacely incurred a statutorily-defined prior serious felony conviction, and accordingly he is entitled to 100 percent conduct credits under the January 2010 version of section 4019. Because the 100 percent formula can be properly applied to both custody periods under the January 2010 version of section 4019, Pacely's claim that the 2011 version of section 4019 applies to

12

the second custody period is of no practical import.  Accordingly, we need not discuss the parties' dispute over the applicability of the 2011 amendment.

Pacely's prior offenses include (1) a 2004 juvenile adjudication for assault with a firearm, and (2) a 2008 adult conviction for carrying a concealed firearm, with a gang participation finding that elevated the concealed firearm offense to a felony.  The parties agree, and we concur, that the juvenile adjudication is not viewed as a conviction for purposes of reducing conduct credits.  (*People v. Pacheco* (2011) 194 Cal.App.4th 343, 346.)[7]  In supplemental briefing requested by this court, the parties disagree, however, whether Pacely's 2008 adult conviction for the firearm offense with the felony-elevating gang finding is a serious felony.  We conclude that, on this record, the 2008 conviction has not been shown to be a statutorily-defined serious felony.

The serious felonies that trigger the 50 percent formula in the January 2010 version of section 4019 are listed in section 1192.7.  In this list, section 1192.7, subdivision (c)(28) includes:  "any felony offense, *which would also constitute a felony violation of Section 186.22 . . . .*"  (Italics added.)  Relevant here, section 186.22, subdivision (a), defines the substantive gang participation offense.

The record indicates that in 2008, when Pacely was an adult, he pled guilty to violating section 12025, subdivision (a)(1) (i.e., carrying a firearm concealed in a vehicle), and admitted a gang participation allegation under section 12025, subdivision

_____

7    In their initial briefing on appeal, the parties both stated that Pacely's prior juvenile adjudication for assault with a firearm constituted a serious felony.  However, in supplemental briefing requested by this court, they concurred that the juvenile adjudication is not a conviction for purposes of conduct credits.

(b)(3).[8]  The summation of the facts set forth in the guilty plea form signed by Pacely in 2008 states:  "unlawfully jointly possessed a firearm while a member of a street gang."  The probation report states that during the prior 2008 offense, Pacely was "one of four occupants" in a car stopped for speeding; a loaded, cocked gun was found hidden in the car near where defendant was seated; defendant initially admitted he had the gun in his back pocket and he hid it when the traffic stop occurred; and during the probation interview defendant recanted and denied knowledge or ownership of the gun.[9]  The probation report says nothing about the other three occupants in the vehicle with defendant during the 2008 offense.  The probation report describes Pacely as a documented gang member, and states that during his 2004 juvenile offense of assault with a firearm, he and several accomplices made statements identifying their gang affiliation.

The gang participation allegation in Pacely's 2008 concealed firearm offense elevates the concealed firearm offense from a misdemeanor to a felony when the defendant "is an active participant in a criminal street gang, as defined in subdivision (a) of Section 186.22 . . . , as a felony."  (§ 12025(b)(3).)  To elevate a firearm-related misdemeanor offense to a felony based on active gang participation, the defendant must have engaged in conduct that satisfies the elements of the section 186.22(a) gang

---

[8]  For convenience, we shall refer to section 12025, subdivisions (a)(1) and (b)(3) and section 186.22, subdivision (a) without including the term "subdivision."

[9]  Defendant was seated in the right rear passenger seat, and the gun was found hidden on the right rear floorboard under the right front passenger seat.

14

participation offense. (*People v. Robles* (2000) 23 Cal.4th 1106, 1115.) Further, the defendant must have engaged in gang participation conduct that was *distinct* from the conduct giving rise to the charged firearm-related offense that is being elevated to a felony due to the gang participation allegation. (*People v. Lamas* (2007) 42 Cal.4th 516, 519-520, 523-525; *In re Jorge P*. (2011) 197 Cal.App.4th 628, 633-634.) Also, to establish the substantive gang participation offense defined in section 186.22(a), *at least two gang members* must have acted in concert to commit the crime; a gang member acting alone does not commit the gang participation offense. (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1133-1138.) In short, a defendant's *gang membership alone* does not suffice to elevate the firearm-related misdemeanor offense to a felony; rather, the defendant must have, *either on a separate occasion or during the current charged firearm incident*, assisted felonious activity with another gang member in violation of section 186.22(a) *by conduct apart from the misdemeanor firearm offense*. (See *Lamas, supra*, at pp. 524-525; *Jorge P., supra*, at pp. 633-634, 637.)[10]

---

[10]    In *Lamas*, the court reversed the felony-elevating portion of the defendant's conviction due to instructional error which did not require the jury to find that the defendant engaged in gang participation activity distinct from the misdemeanor firearm-related offense. (*People v. Lamas, supra*, 42 Cal.4th at pp. 526-527.) The court noted there was no evidence the defendant engaged in any gang participation activity either concurrently with, or prior to, the gun offense, and stated it did not need to decide whether the felony-elevating gang participation allegation "can be satisfied with conduct that occurs *contemporaneously* with otherwise misdemeanor gun offenses . . . ." (*Id*. at p. 526, fn. 9, italics added.) For purposes of our analysis, we will assume that gang participation activity during the charged firearm offense would suffice to permit elevation of the firearm offense to a felony.

15

Under these principles, although the felony-elevating gang provision set forth in section 12025(b)(3) necessarily requires conduct that constitutes a felony violation of section 186.22(a), the section 186.22(a) gang participation conduct *need not necessarily have occurred in conjunction with the charged firearm-related offense*. For example, a defendant can carry a concealed firearm in violation of section 12025(a)(1), and the offense can be elevated to a felony under the section 12025(b)(3) gang participation provision based on the defendant's previous gang participation activity that was *entirely unrelated* to the charged carrying of the firearm. (See, e.g., *People v. Schoppe-Rico* (2006) 140 Cal.App.4th 1370, 1378-1381 [firearm offense was properly elevated to felony even though gang participation activity was not connected to the firearm offense].) In this circumstance, the *concealed firearm offense*, committed with no *current* gang participation activity, cannot properly be characterized as a serious felony under section 1192.7, subdivision (c)(28) because it is not an "offense, which would also constitute a felony violation of Section 186.22 . . . ."

Here, Pacely's admission of the truth of the section 12025(b)(3) felony-elevating gang participation allegation accompanying his 2008 concealed firearm offense constitutes an admission that, apart from carrying the concealed firearm, he also actively participated in gang felonious activity in violation of section 186.22(a). However, there is nothing in the record indicating he participated in the gang felonious conduct *in conjunction with the 2008 firearm conduct* rather than on an entirely distinct occasion. The guilty plea form for the 2008 offense merely states that he "jointly possessed" the firearm while a gang member, with no mention of any gang activity during the 2008

16

incident.  The probation report describing the prior 2008 incident likewise makes no mention of gang activity during the gun possession.  Defendant's *gang membership* alone during his possession of the gun in 2008 is insufficient to establish that gang participation activity was occurring during the 2008 offense. Although there were three other occupants in the car with defendant at the time he possessed the gun who may have jointly possessed the gun with him, the probation report does not contain any information suggesting any of these individuals was *also* a gang member so as to arguably support an inference that gang activity was occurring at the time of the firearm possession.

At most, the probation report depicts that defendant participated in gang activity *in 2004* during his juvenile assault with a firearm offense when he and his cohorts identified themselves as gang members.  This prior gang participation activity in 2004 suffices to elevate the 2008 gun possession to a felony.  However, there is nothing in the record showing that he participated in gang activity *at the time of the 2008 gun possession offense*.

When determining whether a prior conviction constitutes a serious felony, we cannot assume that the prior offense was committed in a particular way unless the record of the prior offense reflects this fact.  (See *People v. Miles* (2008) 43 Cal.4th 1074, 1083; *People v. Watts* (2005) 131 Cal.App.4th 589, 596-597.)  The record does not show that Pacely's 2008 conviction involved conduct that also violated section 186.22.  As stated, the fact that his 2008 concealed firearm offense was elevated to a felony based on his gang participation activity does not alone show that the gang participation conduct occurred in conjunction with the firearm conduct to, in effect, transmute the firearm

17

offense into a gang offense for purposes of qualifying it as a serious felony under section 1192.7, subdivision (c)(28).

The record does not establish that Pacely incurred a statutorily-defined prior serious felony conviction; hence, he is entitled to 100 percent conduct credits under the January 2010 version of section 4019. Pacely should receive 374 conduct credits for his 374 actual custody days.

## DISPOSITION

The judgment is modified to award Pacely a total of 748 custody credits, consisting of 374 actual custody credits and 374 conduct credits. As so modified, the judgment is affirmed. The trial court shall prepare an amended abstract of judgment reflecting the changes in the total credits and conduct credits, and forward a copy to the California Department of Corrections and Rehabilitation.


HALLER, J.

WE CONCUR:


HUFFMAN, Acting P. J.


NARES, J.

18